DECISION AND JUDGMENT ENTRY
This is an accelerated appeal from a judgment of the Lucas County Court of Common Pleas which granted summary judgment to defendants-appellees, BTL Specialty Resins Corp., a.k.a. BTLSR Toledo, Inc. ("BTL") et al., on plaintiff-appellant Jimmie Mays' claims of racial discrimination. From that judgment, Mays raises the following assignments of error:
 "I. THE TRIAL COURT ERRED WHEN IT FOUND THAT PLAINTIFF HAS NOT ESTABLISHED A PRIMA FACIE CASE OF RACE DISCRIMINATION BECAUSE HE FAILED TO DEMONSTRATE THAT HE WAS REPLACED BY A WHITE MALE.
 "II. THE GRANT OF SUMMARY JUDGMENT TO DEFENDANTS WAS ERROR BECAUSE GENUINE ISSUES OF FACT EXIST WITH RESPECT TO WHETHER DEFENDANTS' ARTICULATED REASONS FOR TERMINATING PLAINTIFF'S EMPLOYMENT WERE EITHER THE TRUE REASON OR THE MOTIVATING REASON FOR THEIR ACTIONS."
Because appellant's assignments of error are interrelated, they will be discussed together. The standards for reviewing a trial court's judgment on a summary judgment motion are well-established. Civ.R. 56(C); Harlessv. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64, 67.
The undisputed facts of this case are as follows. On August 2, 1999, Jimmie Mays, an African-American male, was employed by BTL as a second shift foreman. As part of his job, Mays was responsible for setting up the transfer of liquid polyvinyl acetate ("P.V.A.") from a holding tank into a mix tank. Before the transfer, Mays was to ensure that the drain valves on the mix tank were closed. Mays testified at his deposition that, prior to starting the transfer, he checked the drain valves and determined that they were closed. He then started the transfer process, which ran from about 8:00 p.m. to about 10:30 p.m., when Mays turned off the pump. Prior to leaving his shift, he told Dwight Lee, the lead man on the third shift, that he had already pumped 14,000 pounds of P.V.A. and that all Lee had to do was restart the pump. Prior to restarting the pump, Lee looked at the scale, which read 10,400 pounds. Believing that Mays had misread the scale, Lee started the pump. At approximately 4:00 a.m. on August 3, 1999, Lee was notified by another employee that the scale on the mix tank was going down. Lee turned off the pump and discovered that a drain valve on the mix tank was open and that a hose connected to the drain valve was directing the P.V.A. into the city sewer.
An investigation revealed that 29,000 pounds of P.V.A. was released into the city sewer system. Upon further investigation, Daniel Wozniak, the president of BTL, Urban Horinek, the plant manager, and Jim Anderson, the safety, environmental and labor relations manager, determined that Mays was responsible for the spill and Mays was fired. As a result of the spill, BTL was required to pay a $10,000 fine to the city of Toledo Environmental Services Division. In addition, BTL was responsible for the loss of its customer's product.
After Mays was fired, Dwight Lee, who is also an African-American male, was promoted to second shift foreman. That promotion, however, removed Lee from his bargaining unit and after nearly 90 days in the foreman position, Lee decided to return to his prior position as a lead man. Subsequently, Rob Miller, a white man, filled in as the second shift foreman for a short time, but was ultimately replaced by Richard Jackson, an African-American male.
Subsequently, Mays filed charges of racial discrimination with the Ohio Civil Rights Commission and the Equal Employment Opportunity Commission. On April 27, 2000, the Ohio Civil Rights Commission dismissed Mays' complaint after finding that there was no probable cause that BTL had fired him in violation of R.C. Chapter 4112. On June 14, 2000, the Equal Employment Opportunity Commission similarly dismissed Mays' complaint, finding that the evidence did not establish a violation of Title VII.
Mays' complaint against BTL and Daniel Wozniak alleged racial discrimination and wrongful termination in violation of Title VII of the Civil Rights Act of 1964, R.C. Chapter 4112 and the public policy of the state of Ohio as expressed in R.C. Chapter 4112.
Appellant brought his claims of racial discrimination against BTL under both R.C. Chapter 4112 and Title VII of the Civil Rights Act of 1964, Section 2000e et seg., Title 42, U.S. Code. R.C. 4112.02 provides in relevant part:
"It shall be an unlawful discriminatory practice:
 "(A) For any employer, because of the race, color, religion, sex, national origin, disability, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment."
Similarly, Title VII prohibits discriminatory employment practices. Accordingly, the Supreme Court of Ohio has determined that the substantive federal case law interpreting Title VII is generally applicable to cases involving alleged violations of R.C. Chapter 4112.State ex rel. Republic Steel Corp. v. Ohio Civ. Rights Comm. (1975),44 Ohio St.2d 178, 183-184. In Plumbers Steamfitters JointApprenticeship Commt. v. Ohio Civ. Rights Comm. (1981), 66 Ohio St.2d 192,197, the Supreme Court of Ohio recognized that McDonnell Douglas Corp.v. Green (1973), 411 U.S. 792, sets forth the formula that courts should apply "to ferret out impermissible discrimination in the hiring, firing, promoting, and demoting of employees."
"`* * * First, the plaintiff must prove a prima facie case of discrimination. [Texas Dept. of Community Affairs v.] Burdine [1981], 450 U.S. [248] at 252-53 (citing McDonnell Douglas, 411 U.S. at 802
(1973)). If the plaintiff establishes its prima facie case, the burden then shifts to the defendant to `articulate some legitimate, nondiscriminatory reason for the employee's rejection.' Id. (quotingMcDonnell Douglas, 411 U.S. at 804). If the defendant carries this burden, the plaintiff must prove that the proffered reasons were pretextual. Id. (citing McDonnell Douglas, 411 U.S. at 804). Pretext is established by a direct showing that a discriminatory reason more likely motivated the employer or by an indirect showing that the employer's explanation is not credible. Id. at 256." Kline v. Tennessee ValleyAuth. (C.A.6, 1997), 128 F.3d 337, 342-343.
For a plaintiff to make a prima facie case of racial discrimination under Title VII and R.C. Chapter 4112, he must present evidence showing that he "(1) belongs to a racial minority, (2) was discharged, (3) was qualified for the position, and (4) was replaced by, or his discharge permitted the retention of, a person who was not a member of the protected class." Smith v. Five Rivers MetroParks (1999), 134 Ohio App.3d 754,761, citing Plumbers Steamfitters Joint Apprenticeship Commt., supra at 197. Where a plaintiff fails to make this prima facie showing, the burden never shifts to the employer to demonstrate a legitimate, nondiscriminatory reason for the discharge. Id.
In the present case, it is undisputed that appellant was replaced by a member of his protected class. Although that employee, Dwight Lee, decided to return to his bargaining unit after working as the second shift foreman for approximately 90 days, it is undisputed that appellees chose Lee to replace appellant. Moreover, after Lee returned to his bargaining unit, the position of second shift foreman was ultimately filled by an African-American male. Accordingly, appellant failed to set forth a prima facie case of racial discrimination, and the trial court did not err in granting appellees' motion for summary judgment.
In his brief before this court, appellant goes to great lengths to explain why he was not at fault in causing the spill of P.V.A. However, because he failed to set forth a prima facie case of racial discrimination, the court below and this court need not address the issue of whether appellant's firing may have been pretextual.
Because the trial court did not err in granting appellees' motion for summary judgment, both assignments of error are not well-taken.
On consideration whereof, the court finds that substantial justice has been done the party complaining and the judgment of the Lucas County Court of Common Pleas is affirmed. Court costs of this appeal are assessed to appellant.
JUDGMENT AFFIRMED.
Melvin L. Resnick, J., James R. Sherck, J., and Mark L. Pietrykowski,P.J., CONCUR.